SIMON v. SABB.

1. ADMINISTRATORS AND EXECUTORS—FORECLOSURE—FRAUD—PARTIES.— The personal representative of a deceased grantee, who is not a debtor of plaintiff, and who has no control over the lands or the proceeds thereof, is not a necessary party to a foreclosure suit seeking to set aside the conveyance to such grantee and another on the ground of fraud.

2. IBID.—PARTIES—FORECLOSURE.—The personal representative of a deceased mortgagor is a necessary party to a suit in foreclosure.

3. PLEADINGS—MARRIED WOMEN—AGRICULTURAL SUPPLIES—FORECLOSURE.—A COMPLAINT foreclosing a mortgage (1883) given by a married woman to secure a debt for agricultural supplies, must allege that it was a debt contracted for benefit of her separate estate.

4. MARRIED WOMEN.—The proof here shows that this debt was not one contracted by a married woman for benefit of her separate estate.

5. PLEADINGS—DEMURRER.—A COMPLAINT entitling plaintiff to relief either on the law or equity side of the Court is not subject to demurrer, because it does not state facts sufficient to constitute a cause of action.

6. "CASE"—APPEAL.—EXCEPTIONS alleging error in Circuit Judge in
not sustaining exceptions to master's report, which exceptions only
appear in exceptions on appeal here, will not be considered.

Before ALDRICH, J., Barnwell, December, 1898. Re-
versed.

Foreclosure by Joseph A. Simon against Lucretia Sabb,
Grace Morgan, Julia Jones, Hannah Mixson, and Peyton M.
Cater, on the following complaint:

The plaintiff, by his complaint herein, respectfully shows:
I. That one John J. Cater, of the county and State aforesaid,
departed this life on or about the      day of      , 18  ,
leaving a considerable estate in land, which was subsequently
divided among his children, and the tract hereinafter men-
tioned was part and parcel of the share allotted to his daugh-
ter, Susan E. Creech, in said division; and thereafter the said
Susan E. Creech conveyed the same to one Caroline Wil-
liams, by her deed of date 28th day of November, 1879, and
the said Caroline Williams entered upon the possession
thereof, where she remained until the date of her death,
which occurred about the year 1889. II. That during the
year 1882, the entire real estate which was of the said John
J. Cater was levied upon under judgment against his legal
representatives for a debt contracted by the said John J.
Cater in his lifetime, and sold by the sheriff of Barnwell
County, and was purchased by the defendant, Peyton M.
Cater, who took the sheriff's title to the same. III. That
the said Peyton M. Cater bid off the said land in behalf of
and under a parol agreement with all the children of the said
John J. Cater, each child, including the said Peyton M.
Cater, assuming his or her share of the purchase money of
the land; each party, by the terms of the said agreement, to
receive a conveyance from the said Peyton M. Cater of that
portion of the land previously allotted to him or her in the
division aforesaid, upon the payment to the said Peyton M.
Cater of his or her proportion of the purchase money afore-
said; and the said Susan E. Creech fully complied with the

conditions aforesaid, and was entitled to receive from
the said Peyton M. Cater a conveyance of her share
of the land; and, in order to perfect the title of
said Caroline Williams, requested and directed the
said Peyton M. Cater to convey to her the tract
of land previously sold to her by the said Susan E. Creech,
as hereinbefore stated.   IV.  That on the first day of March,
1893 (clerical error in original, should be 1883), the said
Caroline Williams, desiring to obtain advances for agricul-
tural purposes from one Nathan Simon, offered to secure the
same by a mortgage upon her land, the same tract of land
hereinbefore referred to, and pursuant to said agreement
prepared her note in writing for the sum of $250, which is
hereto annexed as a part of the complaint, and a mortgage of
the land hereinafter described, to secure the said note; which
note and mortgage, however, were not executed until the
6th day of the said month; a copy of the said note is as fol-
lows: "$250.   Allendale, S. C., March 6, 1883.   On the
15th day of October next, I promise to pay to the order of
Nathan Simon, at Allendale, S. C., $250, with interest at
seven per cent. and commissions on advances at five per cent.
Witness my hand and seal.  (Signed)  Caroline (her X
mark) Williams.  (L. S.)  Witness: B. B. Sanders."  V.
That the defendant, Caroline Williams, on the 6th day of
March, 1883, to secure the payment of the said note, exe-
cuted and delivered to Nathan Simon her deed, and thereby
conveyed by way of mortgage to Nathan Simon, his heirs
and assigns, the following lands and tenements, situated in
the said county: "All that tract or parcel of land, lying and
being in the State and county aforesaid, containing fifty
acres, being a part of lands of the estate of John J. Cater, de-
ceased, inherited by Susan E. Creech, bounded north by
lands of N. M. Walker, south by lands of Susan E. Creech,
west by lands of J. W. Knepton, and surveyed by T. B. Cold-
ing, August 28th, 1874."  VI. That on 22d day of March,
1883, the said mortgage was delivered to the register of
mesne conveyance of the said county, and was by him re-

corded vol. 4 T, pages 511 to 513. VII. That thereafter, to wit: on the 18th day of April, 1883, the said Nathan Simon duly assigned the said note and mortgage to the plaintiff. VIII. That on the 5th day of March, 1883, during the interval of time between her application for credit and the execution of the said note and mortgage, the said Caroline Williams and her husband, one Solomon Williams, the latter acting for and in behalf of the said Caroline Williams, and aiding and counseling her herein, in collusion with Julia Jones, defendant, and Rebecca Williams, since deceased, intending to cheat and defraud the said Nathan Simon, and to defeat the mortgage which the said Caroline Williams was about to execute to the said Nathan Simon for advances as aforesaid, procured the said Peyton M. Cater to make the title to the said tract of land to her daughters, the defendant, Julia Jones, and their daughter, Rebecca Williams, a minor, who has since died intestate and without issue, leaving as her heirs at law all the defendants herein except defendant, Peyton M. Cater. IX. That the said Peyton M. Cater had no knowledge of the intended fraud, but acted in good faith, as he supposed, in carrying out the instructions of the said Susan E. Creech, but that the said sale was without consideration, fraudulent, and void, as to the right of the plaintiff. X. That the knowledge of the fraud came to the plaintiff, or his assignor, Nathan Simon, within six years next preceding the commencement of this action. XI. That thereafter, to wit: in the year 1889, the said Caroline Williams, who had never parted with the possession of said premises, died intestate, leaving her husband, the said Solomon, and her children, the defendants, Lucretia Sabb, Grace Morgan, *alias* Grace Mixson, Julia Jones, and Hannah Mixson, her distributees and heirs at law. And the said Solomon Williams died soon thereafter, leaving as his heirs and distributees his children, the said defendants. XII. That the condition of the said note and mortgage has been broken, and there is due and remaining unpaid upon the said note and mortgage the sum of $250, with interest from the 6th day of March, 1883.

Wherefore, the plaintiff prays that the deed of conveyance from the said Peyton M. Cater to the said Julia Jones and Rebecca Williams be set aside. That the mortgage be foreclosed, and the premises ordered to be sold and the proceeds applied to the payment of the said debt.

From Circuit decree, defendants appeal.

*Messrs. R. A. Ellis, B. T. Rice* and *Thos. S. Moorman,* for appellants, cite: *No allegation that plaintiff was not aware of alleged fraud within six years:* 36 S. C., 28. *Complaint does not state that this was such a contract as would bind a married woman:* 24 S. C., 361. *Nor that plaintiff has exhausted his legal remedy:* 1 Hill Eq., 113; 18 S. C., 526. *Representatives of deceased parties are necessary parties:* 1 Hill Eq., 338; 26 S. E. R., 224. *All proceeds of mortgaged property should be credited on the debt:* 9 S. E. R., 118; 37 S. C., 213; 1 S. C., 129; 6 S. C., 75; 20 S. C., 549. *Debt being tainted with usury, no interest can be set off against payments:* 2 McC., 369; 1 Rich. Eq., 414; 1 S. C., 231; 1 McM., 229; 2 Rich., 2. *Usury was properly pleaded:* 45 S. C., 60; 110 Ind., 408; 108 N. C., 218. *Heirs may plead coverture:* 116 Ind., 408; 30 S. C., 159.

*Mr. I. L. Tobin,* contra, cites: *Caroline Williams is estopped by her fraudulent representations:* 17 S. E. R., 832.

August 2, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. As some of the exceptions raise the question that his Honor, the Circuit Judge, erred in refusing to sustain the demurrer interposed by all the defendants except Peyton M. Cater, it will be necessary to set out the complaint in the report of the case.

The first exception alleges error, as follows: "Because his Honor overruled the demurrer to the complaint for defect of parties, and held that the administrator of Caroline Wil-

liams and of Rebecca Williams, persons mentioned in
the complaint, were not necessary parties defendant;
whereas he should have held that the administrators
of said deceased persons were necessary parties defendant in
this action, they being charged with fraud." We will first
consider whether the administrator of Rebecca Williams was
a necessary party defendant. Section 143 of the Code con-
tains the following provisions: "The Court may determine
any controversy between the parties before it, when it can be
done without prejudice to the rights of others or by saving
their rights; but when a complete determine of the contro-
versy cannot be had without the presence of other parties, the
Court must cause them to be brought in." Whether it is
necessary that an administrator or executor, as the case may
be, should be made a party to an action, depends upon the
facts of the particular case. *Fogle* v. *Church*, 48 S. C., 86.
The plaintiff was not a creditor of Rebecca Williams; she
was not liable for the mortgage debt, and no judgment could
be rendered against her administrator, who, it is not alleged,
has any control over the lands or the proceeds thereof.
Under these circumstances, the case of *Trapier* v. *Waldo*, 16
S. C., at page 288, shows conclusively that the administrator
of Rebecca Williams was not a necessary nor even a proper
party defendant. The act of 1894, hereinafter considered,
has no application to the question whether the administrator
of Rebecca Williams was a necessary party to the action.

The next question that will be considered is whether the
administrator of Caroline Williams was a necessary party
defendant. The act of 1894, 21 Stat., 816, contains the fol-
lowing provisions: "That from and after the passage of this
act, no sale under or by virtue of any mortgage or
other instrument in writing intended as security for
a debt, shall be valid to pass the title of the land mort-
gaged unless the debt for which the security was given shall
be first established by the judgment of some Court of compe-
tent jurisdiction, or unless the amount of the debt be con-
sented to in writing by the debtor, &c." The other provi-

sions have no application to this case, as it is not pretended that there was any such consent. Whatever doubt may have existed prior to the act hereinbefore mentioned of the necessity for making the administrator of the mortgagor a party defendant, when the plaintiff only sought to subject the mortgaged property to the payment of the debt, there was no doubt even prior to said act of the necessity for making the administrator of the mortgagor a party defendant, if in addition to subjecting the mortgaged property to the payment of the indebtedness, he also desired a judgment against the mortgagor's estate, in order to recover any deficiency that might remain after exhausting the mortgaged property. The act of 1894 deprived the mortgagee of the right to subject the mortgaged property to the payment of the debt before establishing the debt secured by the mortgage by the judgment of a Court of competent jurisdiction. In other words, it became necessary to recover judgment for a specific sum against the mortgagor's estate before the mortgaged property could be sold. In order to recover such judgment the administrator of the mortgagor was a necessary party to the action, and the Circuit Judge erred in not so holding. The act shows upon its face that it has reference to the foreclosure of mortgages executed prior, as well as those executed subsequent, to the passage of the said act. It only related to the remedy, and the legislature had the right to make it applicable to the foreclosure of mortgages, whether executed prior or subsequent to its passage. *Stoddard* v. *Owings*, 42 S. C., 88. The effect of sustaining the exceptions raising this question is a dismissal of the complaint, unless this Court should order the complaint to be retained so that it may be amended.

We will therefore consider the other exceptions for the purpose of determining whether there is such merit in the plaintiff's case as demands that the complaint should be retained and amended. The second exception is as follows: "II. Because his Honor, Judge Townsend, overruled the demurrer, as to the second paragraph thereof, and held that

the complaint stated facts sufficient to constitute a cause of action; whereas he should have held that the complaint did not state a cause of action, in the following particulars: 1. That the complaint stated as the basis of action, a note of a married woman with mortgage to secure advances for agricultural purposes, but does nòt allege that it was such a contract as a married woman could make, nor that it was for the benefit of her separate estate. 2. The plaintiff asks relief in equity against alleged fraud on a note tainted with usury; whereas it is submitted that he cannot come into equity claiming relief on a note whose provisions violate the statute law of the State. He must come into equity with clean hands. 3. The plaintiff, after alleging assignment to himself of bond and mortgage, does not allege that he is the innocent assignee of the same for value without notice; and without such allegation he is not entitled on his complaint to relief in equity. 4. The complaint alleges that Caroline Williams, charged with fraud, died before the commencement of this action; it is sought to recover on a note executed by said Caroline Williams as a security for advances made, and to sell, in order to pay the note of said Caroline Williams, certain land, the legal title of which is in Julia Jones and the heirs at law of Rebecca Williams, deceased. It is alleged in the complaint that said Caroline Williams died intestate, and yet no allegation is made in the complaint to charge any personal representative either of Caroline Williams or of Rebecca Williams, although both are charged with fraud in the complaint."

We will consider the questions raised by this exception in their regular order. At the time this contract was entered into, the right of a married woman to make such a contract was dependent on the power conferred upon her by the statute, and the burden of proof was on the person dealing with her to show that the contract was made with reference to her separate estate. In this case the complaint shows that Caroline Williams was a married woman when the note and mortgage were executed, and

there are no allegations showing that the agricultural sup-
plies were for the benefit of her separate estate.   The com-
plaint was, therefore, subject to demurrer, and the Circuit
Judge erred in overruling it.   But even if the allegations of
the complaint were sufficient to constitute a cause of action,
the written testimony, to wit: the memorandum of
agreement when the note and mortgage were exe-
cuted, shows that the contract was not "as to her sep-
arate estate."   The memorandum of agreement which sets
forth the consideration of the mortgage is as follows:
"*Memorandum of agreement* made this 6th day of March,
A. D. 1883, between Nathan Simon, of Allendale, S. C.,
merchant, and Stephen Mixson, William Solomon Williams,
and Caroline Williams, of Barnwell County, planters.   The
said Nathan Simon agrees to advance at his discretion to
the said Solomon and Mixson such supplies for agricultural
purposes as he may require from time to time, not exceeding
in the aggregate the sum of $250, to be employed in the cul-
tivation of the plantation known as Mrs. Barnes' Turkey
Creek place, and about thirty acres, and the place of Caroline
Williams, containing about fifty acres, twenty of which is
under cultivation.   The thirty acres on the place of Mrs.
Barnes being the amount thereon cultivated by us.   And the
said Caroline Williams, William Solomon Williams, and
Stephen Mixson hereby agree that the said Nathan Simon
shall have a lien for said advances, and the interest due
thereon on all crops made on the said plantations during the
year of 1883, in accordance with and subject to the provi-
sions of the laws of the State of South Carolina.   We fur-
ther agree to ship to said Nathan Simon, or his factor, as he
may direct, on or before the 15th of October next, ten bales
of cotton, and in default thereof to pay a commission of two
and one-half per cent. thereon.   We further bind ourselves
that this is the only lien given this year on our crop and the
only one we expect or intend to give.   Witness our hands
and seals, the day above written.   Caroline (her X mark)
Williams.   (L. S.)   William Solomon (his X mark) Williams.

(L. s.) Stephen (his X mark) Mixson. (L. s.) Sealed and delivered in the presence of B. B. Sanders, F. S. Owens." The note and mortgage were executed for the purpose of securing payment for the said advances which were to be made to William Solomon Williams and Stephen Mixson. It was, therefore, not a contract "as to her separate estate."

2. We will next consider the second question raised by this exception. It has been frequently determined by this Court that a complaint is not subject to a demurrer, if it contains allegations entitling the plaintiff to relief either on the law or equity side of the Court. This principle is conclusive of the question under consideration.

3. We proceed to a consideration of the third question raised by this exception. If the note and mortgage were valid, the mortgagee unquestionably had the right to assign them, and the question whether the person to whom they were assigned was an innocent assignee for value without notice, has nothing to do with this case.

4. The fourth question is disposed of by what was said in considering the first exception.

The exceptions to the master's report are not set out in the record. All the exceptions to Judge Aldrich's order, except one, are based upon the fact that he overruled certain exceptions to the master's report. The exceptions to the said report are set out in the exceptions to the order of Judge Aldrich, but as they are not set out in the record elsewhere, they cannot be considered. It has been determined time and again that this Court will not consider, as part of the record, statements which are only contained in the exceptions. The rule has for its object the prevention of misunderstanding between counsel. Of course, this Court does not mean to reflect upon the attorneys for the appellants in refusing to consider said exceptions.

The only exception to the order of Judge Aldrich which is not susceptible to the foregoing objection is the one which complains of error in adjudging that Julia Jones and Lu-

cretia Sabb pay any deficiency that may arise after exhaust-
ing the mortgaged property. This ·was error, and· is
disposed of by what was said in considering the first excep-
tion. We see no reason for allowing the complaint to be re-
tained for the purpose of amendment.

It is the judgment of this Court, that the judgment of the
Circuit Court be reversed and that the complaint be dis-
missed.